**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY JARVELA, | ) | CASE NO. 1:25-CV-02484-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Jeffrey Jarvela ("Jarvela" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On June 1, 2023, Jarvela filed applications for DIB and SSI, alleging a disability onset date of December 1, 2018 and claiming he was disabled due to Autism Spectrum Disorder and ADHD. (ECF No. 5, PageID #: 226, 284). The applications were denied initially and upon reconsideration, and Jarvela requested a hearing before an administrative law judge ("ALJ"). (ECF No. 5, PageID #: 130-31). On January 14, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, Claimant's wife, and an impartial vocational expert testified. (ECF No. 5, PageID #: 52-92). On, January 29, 2025 the ALJ issued a written decision finding Jarvela was not disabled.

1

(ECF No. 5, PageID #: 34-46).  The ALJ's decision became final on September 16, 2025, when the Appeals Council declined further review.  (ECF No.  5, PageID #: 23-25).

On November 14, 2025, Jarvela filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 7, 8, 9). Jarvela asserts the following assignments of error:

1. The administrative law judge erred in her evaluation of the opinion of treating physician Dr. Neeti Wyckoff by entirely failing to address the supportability of the opinion and failing to explain how the opinion was inconsistent with other evidence.

2. The ALJ legally erred in her assessment of Mr. Jarvela's statements concerning the intensity, persistence, and limiting effects of his symptoms when she failed to explain the inconsistency between his statements and the objective record and considered no factors beyond reference to the objective evidence.

3. The ALJ legally erred by failing to provide any analysis of autism, which was diagnosed by multiple acceptable medical sources, and by failing to consider the potential resulting limitations from the condition in its RFC finding.

(ECF No. 7).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Jarvela's hearing:

> At the hearing, the claimant alleged that he was let go from his prior job because he was increasingly becoming withdrawn and missing too much work. However, before that time, the claimant was given some flexibility. He also indicated that he was having a difficult time communicating with others at work. The claimant alleged at the hearing that he suffers from anxiety and becomes overwhelmed if something goes wrong. After he lost his job, the claimant isolated himself. He also reported difficulty taking care of himself and household needs. His wife has to remind him to complete certain activities of daily living. He does not shop, but is able to prepare simple meals for himself and do laundry. He is able to perform household chores and take care of his dogs, but has to be asked by his wife. He socializes online and plays games with others online.

(ECF Doc. 5, PageID #: 42).

### B.  Relevant Medical Evidence

The ALJ also summarized Jarvela's health records and symptoms:

[I]n August 2018, the claimant presented for evaluation of outpatient mental health treatment (Exhibit 1F at 13). He reported symptoms of depression and insomnia. On follow-up in December 2018, the claimant continued to report depressed mood, increased irritability, anhedonia, feelings of guilt/worry, hopelessness, helplessness, and passive thought of death (Exhibit 4F at 38). The claimant also noted that he was struggling with social anxiety and rarely socialized outside of time with his wife. On examination, his affect was restricted with social smiles. However, he was appropriately dressed, cooperative, with logical and coherent thought process. His eye contact was fleeting and he demonstrated generalized anxiety. Memory was intact, there was no evidence of attention/concentration deficits, and judgment and insight were intact.

During an initial evaluation in September 2020, the claimant reported a long history of problems with attention, motivation, organization, memory, avoidance, following through, and multitasking (Exhibit 17F at 3). He appeared anxious with a flat affect. His speech was abnormal, eye contact poor, and attention mildly impaired. However, thought process was logical, linear, and goal directed, judgment and insight good, memory intact, and fund of knowledge intact. On follow-up, thoughts were circumstantial and concrete; however, objective findings were otherwise essentially unchanged (Exhibit 2F at 20). The claimant was re evaluated for psychiatric treatment in December 2022 (Exhibit 3F at 4). He reported that he was not being productive lately. On examination, the claimant appeared anxious and down, affect was flat, and speech was monotone. Behavior was normal, motor activity normal, and thought process intact. There was no abnormal memory and judgment and insight were normal; however, the claimant reported deficits in memory and task completion.

In February 2023, the claimant reported less stress and depressed feelings (Exhibit 16F at 5). His affect was flat at times, but behavior, speech, motor activity, thought process, attention, insight, judgment, and fund of knowledge were all within normal limits. The claimant was quiet and took his time answering questions. On follow-up, the claimant was struggling with negative thoughts of self-worth and lack of motivation (Exhibit 15F at 3). He also reported difficulty taking his medications independently (Exhibit 15F at 15). The claimant was unable to improve activities of daily living and social engagement (Exhibit 9F at 8). He also reported an inability to maintain progress with moderate stressors present.

On follow-up in January 2024, symptoms include emotional dysregulation, anxiety, occasional panic attacks, social avoidance, sleep issues, depressed mood, feelings of worthlessness, guilt, loss of interest, lack of motivation, fatigue, low energy, and difficulty with work (Exhibit 9F at 8). The claimant stopped taking his medications due to difficulty swallowing pills (Exhibit 18F at 4). He subsequently reported increased anxiety and depressive symptoms. His mood was low, affect dysphoric,

3

and speech slow/halting. There was also evidence of psychomotor retardation. Thought process was logical, organized, and goal directed, memory good, knowledge normal, attention intact, and judgment and insight good.

(ECF Doc. 5, PageID #: 42-43).

### C. Opinion Evidence at Issue

The ALJ addressed the opinions of Dr. Wycoff as follows:

Neeti Wyckoff completed a questionnaire in June 2023 (Exhibit 5F). Dr. Wyckoff concluded that the claimant would need 4-5 additional breaks during an eight-hour workday and would be off task 20% of the day. He would also be absent from work more than four times a month. I do not find the opinions of Dr. Wyckoff persuasive. While a treating source, these extreme conclusions are not supported by the treatment records. Other opinions of record are more consistent with the weight of the objective evidence of record. For example, Tom Ference, Ph.D., examined the claimant at the request of the DDD on October 18, 2023 (Exhibit 7F). Dr. Ference concluded that the claimant is not limited in his ability to understand, carry out, and remember instructions. His attention and concentration were limited and motivation impaired. His abilities to interact with others and managing pressures would also be limited in the work setting.

(ECF Doc. 5, PageID #: 43).

The ALJ addressed the opinion of the state agency reviewing psychologists as follows:

Amy Johnson, Psy.D., evaluated the claimant's mental condition based on the evidence of record without examining the claimant on behalf of the DDD on November 29, 2023 (Exhibit 4A). Dr. Johnson concluded that the claimant experiences mild limitations in her ability to understand, remember, or apply information, moderate limitations in her ability to interact with others, moderate limitations in her ability to concentrate, persist, or maintain pace, and moderate limitations in his ability to adapt or manage himself. This assessment was affirmed upon reconsideration (Exhibit 4A).

I find the opinions of the evaluating sources persuasive as they are well supported and not consistent with the weight of the objective evidence of record. For example, treatment records generally document logical, goal-directed, linear and coherent thought process, intact memory, and adequate fund of knowledge (Exhibits 3F at 4, 4F at 38, 16F at 5, 17F at 3, an 18F at 4). However, the claimant subjectively reported difficulty with memory (See Exhibit 17F at 3). There was also some mention of circumstantial and concrete thought process at one time (Exhibit 2F at 20). Therefore, I find that, in understanding, remembering or applying information, the claimant had a mild limitation.

4

(ECF Doc. 5, PageID #: 40).

## IV.     The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1.      The claimant last met the insured status requirements of the Social Security Act on June 30, 2024.

2.      The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2018 through his date last insured of June 30, 2024

3.      Through the date last insured, the claimant had the following severe impairments: depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember and carry out simple instructions; can perform tasks that do not involve a specific production rate pace, assembly line work, or an hourly production quota; can have frequent interaction with co-workers and the public; can have occasional interaction with supervisors; and can deal with occasional changes in a routine setting.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2018, the alleged onset date, through June 30, 2024, the date last insured.

(ECF Doc. 5, PageID #: 39-45).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating

physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Jarvela raises three issues on appeal:

1. The administrative law judge erred in her evaluation of the opinion of treating physician Dr. Neeti Wyckoff by entirely failing to address the supportability of the opinion and failing to explain how the opinion was inconsistent with other evidence.

2. The ALJ legally erred in her assessment of Mr. Jarvela's statements concerning the intensity, persistence, and limiting effects of his symptoms when she failed to explain

the inconsistency between his statements and the objective record and considered no factors beyond reference to the objective evidence.

3. The ALJ legally errs by failing to provide any analysis of autism, which was diagnosed by multiple acceptable medical sources, and by failing to consider the potential resulting limitations from the condition in its RFC finding.

(ECF No. 7).

### i.        The ALJ Failed to Address Jarvela's Claimed Impairment of Autism

The Court will address Jarvela's claim that the ALJ failed to adequately address his claim that Autism Spectrum Disorder ("ASD") was a disabling impairment first, because it is relevant to both the other assignments of error.

Jarvela asserts that the ALJ violated 20 CFR § 404.1523(c), 20 CFR § 404.1545(a)(2) and SSR 96-8p, which require the ALJ to consider the combined effect of all impairments, including non-severe impairments, and to explain how they were considered in crafting the RFC. He argues that "the ALJ's complete silence as to autism diagnosis — despite diagnoses by both a treating psychiatrist and the agency's own consultative examiner — makes it impossible to determine whether the RFC accounts for the functional limitations associated with the condition." (ECF Doc. 7, p. 23).

The Commissioner disputes this assertion, noting that the ALJ did, in fact address Jarvela's ASD in a single sentence that acknowledged he "alleged disability, in part, due to autism." (ECF Doc. 8, p. 13, citing ECF Doc. 5, PageID #: 42). He also argues that "it is questionable whether Plaintiff had a valid diagnosis during the relevant period," and asserts that, if there was no valid diagnosis, the ALJ was under no obligation to discuss this claimed impairment. (*Id.*)  Finally, he asserts that even if the ALJ did err, it was a harmless error because both of the state agency psychologists who reviewed the record determined ASD was not a medically determinable impairment. (*Id.*)

8

### a.  Multiple Diagnoses of Autism Exist in the Record

The Commissioner asserts that "the ALJ was not required to include limitations for a condition never diagnosed by any physician." (ECF Doc. 8, p. 13, citing *Boxler v. Comm'r of Soc. Sec.*, No. 5:16-CV-2154, 2017 WL 2729104, at *5 (N.D. Ohio June 1, 2017), *report and recommendation adopted*, No. 5:16-CV 2154, 2017 WL 2720420 (N.D. Ohio June 23, 2017). He notes that an hour-long autism screening, consisting of a diagnostic interview and observation, performed in December 2018 did not indicate autism. (*Id.*, citing ECF Doc. 5, PageID #: 479-80). He argues that it is therefore "questionable whether Plaintiff had a valid diagnosis during the relevant period (i.e., from December 1, 2018 through June 30, 2024)." (*Id.*)

The Court notes that multiple diagnoses of ASD, made during the relevant period, appear in the record. Consultative examining psychologist Tom Ference PhD, MPH, examined Jarvela on October 18, 2023, at the request of the agency. He noted that Jarvela reported "problems with symptoms of autism and AD/HD including repetitive motor movements, deficits in nonverbal communication, sensory management deficits, careless mistakes and difficulty sustaining attention in tasks." (ECF Doc. 5, PageID #: 549). Dr. Ference based his opinion on his clinical interview of Jarvela, a handwritten function report, mental health notes, termination of employment notice and Disability Report - Form SSA-3368. (*Id.* at PageID #: 547). Based on this information, Dr. Ference diagnosed Jarvela with Autistic Spectrum Disorder, as well as Generalized Anxiety Disorder, Major Depressive Disorder, recurrant, mild, and Unspectified Attention Deficit/Hyperactivity Disorder. (*Id.* at PageID #: 551).

ASD is also discussed throughout the records of Jarvela's treatment with his primary care psychiatrist. In October 2022, Dr. Wyckoff noted that she "[s]uspect[s] patient may have features of autism and avoidant PD which makes interactions with emotions and others difficult." (ECF

9

Doc. 5, PageID #: 794). In May 2023, Dr. Wyckoff noted that Jarvela and his wife also suspected he had autism and requested screening. (*Id*. at PageID #: 804). Dr. Wyckoff appears to have initiated the screening the following month, because her June 2023 treatment note states that, "[b]ased on Diagnostic & Statistical Manual questionnaire filled out patient does meet criteria for autism Level 1."[1] (*Id*. at PageID #: 810). The same month, she provided a medical source statement indicating ASD as a diagnosis, and stating that Jarvela "has autism, so he would shut down, withdraw, or become tense." (*Id*. at PageID #: 543). Autism appears as a current diagnosis on her subsequent treatment notes. (*See, e.g., id*. at PageID #: 811, 815, 820, 824, 828, 836, 841). Her January 2024 treatment note states that Jarvela "struggles in his social/communication skills due to his autism." (*Id*. at PageID #: 825). Her November 2024 progress note described Jarvela as "a 38-year-old-male with a history of Autism Spectrum Disorder." (*Id*. at PageID #: 838).  In a January 2025 letter, she stated that "probable autism" combined with depression and anxiety to prevent Jarvela from maintaining employment. (*Id*. at PageID #: 921).

Finally, the 2018 ASD evaluation referenced by the Commissioner was initiated because one of Jarvela's medical care providers at MetroHealth, Candia Luby, APRN-CNP, referred Mr. Jarvela for an autism evaluation in November 2018 after he was "seen by outside psychologist and recommended patient be evaluated." (ECF Doc. 5, PageID #: 422).

This Court lacks both the expertise and the authority to determine whether any or all of these diagnoses are clinically valid. Whether or not whether Jarvela had a valid diagnosis of ASD during the relevant period is exactly the kind of factual issue that the ALJ must address in her

---

[1] Other treatment records indicate that Jarvela and his wife believed this to be a valid ASD diagnosis. For example, the December 2024 intake for from Jarvela's therapy provider states that "Per statements from the client's wife, the client was officially diagnosed with symptoms of autistic disorder was diagnosed on 6/16/2023 in 2022 by the client's psychiatric provider," and it was listed as a current medical condition (ECF Doc. 5, PageID #: 886, 896). The therapist's scope of practice did not include autism diagnosis, so no independent diagnosis was attempted. (*Id*. at PageID #: 891)

decision. In *Boxler*, the case cited by the Commissioner, the court found that "there is <u>no evidence</u> that [claimant] was diagnosed with [the alleged impairment] as she suggests." *Boxler*, 2017 WL 2729104, at *5 (emphasis added).

It is well-settled that the ALJ has the responsibility to resolve conflicts in the record. *See, e.g.*, *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC); *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) ("It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence") *citing Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted). ("It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence.")

Here, there is evidence that Jarvela was diagnosed with ASD multiple times, both by his treating psychiatrist and the consultative examiner. There are also findings in the record that Jarvela does not have ASD: a 2018 diagnostic interview and observation, and the explanatory notes of the reviewing psychologists. This is a significant and clear conflict of medical evidence that must be resolved by the trier of fact. Thus, the Commissioner's argument that the ALJ had no obligation to address Jarvela's allegation of ASD in unavailing.

### b. The Reasoning of the ALJ is not Clearly Explained

The ALJ mentions autism only once in her decision: when she states that Jarvela "originally alleged disability due to autism spectrum disorder and ADHD." (ECF Doc. 5, PageID #: 42). This is true, but far from complete, because it fails to acknowledge that Jarvela continued to allege

11

disability due to ASD throughout the process. The ALJ does not address any of the evidence discussed above relating to ASD. Because the ALJ failed to address Jarvela's allegation of ASD in her opinion, we are left to speculate about how she incorporated this alleged disability into her RFC analysis.

It is well-settled that a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Knott v. Kijakazi*, No. 3:22-CV002149, 2023 WL 5044434, at *9 (N.D. Ohio June 22, 2023), quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010). While the standard of review is deferential, the ALJ is required to explain their reasoning sufficiently to allow meaningful review.

As discussed above, Dr. Ference, the consultative examiner, diagnosed Jarvela with ASD in his opinion. The ALJ noted that she found "the opinions of Dr. Ference generally persuasive as they are well supported by objective signs and findings upon examining the claimant." (ECF Doc. 5, PageID #: 43). Further, the ALJ explained that Dr. Ference's opinions were only "generally persuasive" because "[w]hile well supported, [they] are somewhat vague and other opinions of record are more vocationally relevant." (*Id*.) If the ALJ intended to dismiss Dr. Ference's diagnosis of ASD as invalid, as the Commissioner suggests, the Court cannot discern that from the text of her opinion, which fails to acknowledge or address it at all.

12

Dr. Wyckoff also discussed the impact of ASD on Jarvela's functional capacity in her January 2025 letter and June 2023 medical source statement. The ALJ did not address Dr. Wyckoff's January 2025 letter at all, and found the June 2023 opinion of Dr. Wyckoff "unpersuasive" noting that it was inconsistent with the treatment record and, in particular, the opinion of Dr. Ference. (*Id.*)  However, one area in which Dr. Ference and Dr. Wyckoff were in agreement was the belief that Jarvela had ASD. Further, Dr. Ference's opinion was the only record document the ALJ specifically identified as inconsistent with Dr. Wyckoff's opinion, leaving the Court with no guidance as to why she omitted consideration of a condition that was articulated by both Jarvela and his treating psychiatrist as a cause of his functional impairment, and confirmed by the consultative examiner.

The Commissioner asserts that the Court should look to the opinions of state agency evaluating psychologists, Drs. Amy Johnson and Ellen Rozenfeld, who reviewed the record and offered opinions at earlier stages of the disability evaluation process. (ECF Doc. 8, p. 13). Drs. Johnson and Rozenfeld addressed the issue in identical language, explaining that, "[Consultative Examiner diagnosed claimant with] autism d/o & ADHD. Previous medical records on file, including an autism evaluation, note not dx of Autism & r/o of ADHD. There is insufficient evidence to support an MDI [medically determinable impairment] of Autism & ADHD. CE GAVE DX OF UNSPECIFIED ADHD" (ECF Doc. 5, PageID #: 98, 109).

The ALJ, while deeming "the opinions of the evaluating sources persuasive," also explained that they "are well supported and <u>not consistent</u> with the weight of the objective evidence of record." (ECF Doc. 5, PageID #: 40 (emphasis added)). This could be a typo, omitting the letters "in" before the word "consistent." However, it could also be the ALJ's intended meaning, because these identical opinions are not consistent with Dr. Wyckoff's treatment records, or Dr. Ference

and Dr. Wyckoff's opinions.[2] She does not mention the ASD diagnosis in her assessment of any of this evidence. The Court also notes that the evaluating psychologists opined that there was "insufficient evidence to support a MDI [medically determinable impairment] of <u>Autism &amp; ADHD</u>." (*Id*. at PageID #: 99, emphasis added). Yet the ALJ rejected only the Autism diagnosis, indicating that she did find some inconsistency between these opinions and the medical record evidence.

### c.  This Error was not Harmless

The Commissioner also asserts that any error by the ALJ in omitting discussion of Jarvela's autism is harmless, because considering his autism would not meaningfully change the RFC determination, and therefore the outcome of the case. (ECF Doc. 8, p. 15). However, this requires the Court independently weigh the conflicting evidence discussed above, and to substitute its own reasoning for the ALJ's. The Commissioner posits that, because the reviewing psychologists believed no valid ASD diagnosis was in the record, and the ALJ found these opinions persuasive, consideration of evidence suggesting that both Jarvela's treating psychiatrist and the consultative examining psychologist believed he had autism would not have altered her conclusions. However, the ALJ did not articulate this reasoning herself.

Further, the Dr. Wyckoff's opinions, discussed in the following section, include limitations more restrictive than those adopted by the ALJ, and are based, in part, on her belief that "a large trigger for [Jarvela's] anxiety at work is his limitations in his ability to communicate due to his recent diagnosis of autism." (ECF Doc. 5, PageID #: 543). Therefore, there is clear evidence in the

---

[2] The Court is aware that opinions are not generally described as "objective evidence." However, given that the only piece of "objective record evidence" that the ALJ identified as inconsistent with Dr. Wyckoff's opinion was the opinion of Dr. Ference (ECF Doc. 5, PageID #: 43), she could have intended to include them here as well.

record supporting Plaintiff's assertion that if the ALJ had found an MDI of ASD, this disorder, in combination with Jarvela's other impairments, would likely have affected the RFC determination.

The Court recognizes that an "ALJ need not cite every piece of evidence in the record and 'an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Deaner v. Comm'r of Soc. Sec.,* 840 F. App'x 813, 819 (6th Cir. 2020) (citations omitted). However, "[i]f relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked." *Propst v. Comm'r of Soc. Sec.*, No. 5:20-cv-01755, 2022 WL 657481, at *2 (N.D. Ohio Mar. 3, 2022). Further, "[t]he presence of contrary evidence that the ALJ omitted means that the ALJ did not build an accurate, logical bridge between the evidence and the RFC." *Id.* (citing *Fleischer*, 774 F. Supp. 2d at 877). Here, because the ALJ's decision does not indicate that she considered a substantial portion of the evidence concerning the nature of Jarvela's claimed impairment of ASD, the ALJ failed to build a logical bridge between the evidence and her decision. *Id.*

The Court concludes that the ALJ failed to adequately explain her determination that Jarvela did not have ASD. Because she did not attempt to explain how she resolved the conflicting evidence regarding that impairment, this Court cannot provide meaningful review of that determination. This failure harms Jarvela because if the ALJ had determined ASD was an MDI, it might have altered the RFC determination significantly enough to affect the outcome of the disability determination. This Court cannot assume the role of trier of fact to resolve the conflict in evidence regarding ASD. Therefore, remand is required to allow the ALJ to address these issues.

### ii. The ALJ Failed to Adequately Explain her Evaluation of the Persuasiveness of Dr. Wyckoff's Opinion

Jarvela also asserts that the ALJ erred because she "entirely failed to assess the supportability of Dr. Wyckoff's opinions," which include a July 2023 medical source statement

15

and a January 2025 letter. (ECF Doc. 7, p. 15-18). He notes that Dr. Wyckoff "provided substantial explanation in support of her opinions," yet the ALJ "did not directly or indirectly address the evidence or explanations offered by Dr. Wyckoff in support of her opinions." (*Id*. at p. 17). The Commissioner disagrees, and asserts that the ALJ addressed both the required factors of supportability and consistency in her opinion. (ECF Doc. 8, p. 7-9).

An ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b) & (c). Supportability is defined as "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion," while consistency is defined as how consistent a medical opinion is with "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(1) & (2).

As Jarvela points out, the ALJ completely failed to acknowledge or address one of the primary medical conditions identified by Dr. Wyckoff as the basis for her June 2023 medical source statement: Jarvela's claimed ASD diagnosis. For example, Dr. Wyckoff opined that Jarvela would be off-task up to 20% of a workday because he "has autism so he would shut down, withdraw or become tense." (ECF Doc. 5, PageID #: 543). She opined he would not be able to work consistently around co-workers without becoming distracted or disruptive because he "struggles with interactions with others and gets overstimulated easily." (*Id*.)  She also explained that ASD exacerbated the functional limitations relating to anxiety as well, because "a large trigger for his anxiety at work is his limitations in his ability to communicate due to his recent diagnosis of autism." (*Id*.)

16

As discussed in depth in the previous section, nothing in the ALJ's decision indicates that she considered the records supporting the contention that Dr. Wyckoff's identification of ASD as an impairment affecting Jarvela's ability to work was valid. Instead, she limited her analysis of the alleged ASD impairment to the statement that Jarvela "originally alleged disability due to autism spectrum disorder and ADHD," and her analysis of Dr. Wyckoff's June 2023 opinion the broad statement that "I do not find the opinions of Dr. Wyckoff persuasive. While a treating source, these extreme conclusions are not supported by the treatment records." (*Id*. at PageID #: 42, 43). This may be an attempt to address the element of supportability, but the phrase "the treatment records" fails to make clear whether she is referring to Dr. Wyckoff's own extensive treatment records, or those of other providers, and the lack of any citations makes this mystery unsolvable. The ALJ continues her explanation by clearly moving to the element of consistency, explaining, "Other opinions of record are more consistent with the weight of the objective evidence of record."  She then cites a single piece of inconsistent evidence – the opinion of Dr. Ference – in support of this conclusion. (*Id*.)

The Commissioner asserts that Jarvela's assignment of error "should be rejected because the ALJ addressed the supportability (or in this case the lack thereof) by discussing several of Dr. Wycoff's treatment records and <u>explaining why</u> they were inconsistent with her "extreme conclusions." (ECF Doc. 8, p. 8 (emphasis added), citing ECF Doc. 5, PageID #: 43). This statement is inaccurate. First, nowhere in the decision does the ALJ attribute treatment records to Dr. Wyckoff. So while the Commissioner is correct that the ALJ summarizes some of Dr. Wyckoff's records in earlier sections of the opinion, it is not clear that she was referencing any or all of them. Second, the ALJ does not explain why she found any of Dr. Wyckoff's records inconsistent with her opinion. That citation offered by the Commissioner includes the ALJ's

17

conclusory statement and reference to the opinion of Dr. Ference, as noted above. There is no explanation of why the ALJ concluded that Dr. Wyckoff's own treatment records do not support her opinion.

The records the ALJ summarizes are not organized by provider, nor are they clearly unsupportive of Dr. Wyckoff's conclusions. For example, when summarizing the treatment records, the ALJ noted:

- [T]reatment records generally document logical, goal-directed, linear and coherent thought process, intact memory, and adequate fund of knowledge (Exhibits 3F at 4 [treatment record of Karen Collins, APRN-CNP], 4F at 38 [treatment record of Dr. Ahuja], 16F at 5 [treatment record of Michael Tesler, LPCC-S LICDC], 17F at 3 [treatment record of Dr. Wyckoff], an[d] 18F at 4). However, the claimant subjectively reported difficulty with memory (See Exhibit 17F at 3[treatment record of Dr. Wyckoff]). There was also some mention of circumstantial and concrete thought process at one time (Exhibit 2F at 20 [treatment record of Karen Collins, APRN-CNP]). (ECF Doc. 5, PageID #: 40, citing PageID #: 408, 434, 475, 722, 754).

- Treatment records generally document depressed mood, poor eye contact, flat affect, and anxious mood (Exhibits 2F at 20 [treatment record of Karen Collins, APRN-CNP], 3F at 4 [treatment record of Michael Tesler, LPCC-S LICDC], 4F at 38 [treatment record of Dr. Ahuja], 16F [treatment record of Michael Tesler, LPCC-S LICDC] and 17F at 3 [treatment record of Dr. Wyckoff]). He was also irritable at times (Exhibit 4F at 38 [treatment record of Dr. Ahuja]). The claimant often reported social anxiety (See also Exhibit 9F at 8 [treatment record of Halle Worley, M.S.]). However, the claimant was also described as cooperative, with normal behavior (See Exhibits 3F at 4 [treatment record of Michael Tesler, LPCC-S LICDC], 4F at 38 [treatment record of Dr. Ahuja], and 16F at 5 [treatment record of Michael Tesler, LPCC-S LICDC]). (ECF Doc. 5, PageID #: 40, citing PageID #: 408, 434, 475, 594, 754).

- During an initial evaluation in September 2020, the claimant reported a long history of problems with attention, motivation, organization, memory, avoidance, following through, and multitasking (Exhibit 17F at 3 [treatment record of Dr. Wyckoff]). He appeared anxious with a flat affect. His speech was abnormal, eye contact poor, and attention mildly impaired. However, thought process was logical, linear, and goal directed, judgment and insight good, memory intact, and fund of knowledge intact. (ECF Doc. 5 at PageID #: 43, citing PageID #: 754).

18

- On follow-up, thoughts were circumstantial and concrete; however, objective findings were otherwise essentially unchanged[3] (Exhibit 2F at 20 [treatment record of Karen Collins, APRN-CNP]). (ECF Doc. 5, PageID #: 40, citing PageID #: 408).

The Commissioner's assertion that the ALJ in fact intended to refer back to Dr. Wyckoff's treatment records is unpersuasive given that none of these records are identified by author, and the ALJ failed to cite – let alone reference or discuss - any of them in her analysis of Dr. Wyckoff's opinion. Further, this hodgepodge of medical findings from disparate, unidentified providers is insufficient to build a clear and logical bridge between Dr. Wyckoff's treatment records and the ALJ's conclusion that they did not support her medical opinion regarding his functional limitations.

Jarvela is correct that the ALJ's analysis of Dr. Wyckoff's opinion fails to distinguish between the elements of supportability and consistency. Further, it fails to build a clear and logical bridge between the evidence and her conclusion regarding the persuasiveness of that opinion. Rather than clearly explaining her reasoning, the ALJ offers the reviewer conclusory statements unsupported by the record evidence. Therefore, remand is also necessary on this issue. The ALJ should take the opportunity of remand to clarify her reasoning in assessing the persuasiveness of Dr. Wyckoff's opinion.[4]

---

[3] The Court notes that other changes included the description of Jarvela's Judgement and Insight as "fair" rather than "good," and a "blunt" affect. (ECF Doc. 5, PageId #: 408).

[4] The Court notes that Jarvela refers to the ALJ's treatment of "Dr. Wyckoff's opinions," but does not offer a developed argument relating to Dr. Wyckoff's 2025 opinion letter. Therefore, this argument is waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997), quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted); *accord United States v. Hayter Oil Co.,* 51 F.3d 1265, 1269 (6th Cir. 1995); *United States v. Phibbs,* 999 F.2d 1053, 1080 n. 12 (6th Cir. 1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

### iii.      Consideration of Subjective Symptoms

Because remand is already necessitated by both of Jarvela's other assignments of error, the Court will not provide a detailed analysis of the third. Jarvela asserts that the ALJ also erred by failing to explain the inconsistency between his statements regarding his subjective symptoms and the objective record and considering no factors beyond reference to the objective evidence, in violation of Social Security's own regulations. (ECF Doc. 7, p. 19-23). The Commissioner disagrees, noting accurately that the ALJ considered some of Jarvela's reported activities of daily living – although this is somewhat misleading since the ALJ cited these limited activites as supporting Jarvela's assertions that his subjective symptoms limited his functioning, in contrast to treatment records, which she concluded did not. (ECF Doc. 8, p. 10-11).

Given the ALJ's need to more thoroughly review the record, cite specific evidence, and clearly explain her reasoning in other areas of her opinion, detailed above, the Court recommends that she take the opportunity of remand to provide the same clarification of her analysis of Jarvela's subjective symptoms.

## VI. Conclusion

For all the reason set forth above, the ALJ's decision does not allow for an adequate review by this Court, and this matter must be remanded. *See Wylds v. Comm'r of Soc. Sec.*, No. 3:21-CV-00365-JGC, 2022 WL 1541928, at \*10 (N.D. Ohio Mar. 2, 2022) ("Because the ALJ's opinion does not permit the Court to follow the 'reasoning and treatment of' opinion evidence in the record, the Commissioner's decision must be vacated and remanded for further proceedings."), *report & recommendation adopted*, 2022 WL 1539266 (N.D. Ohio May 16, 2022).

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence

Four of § 405(g). On remand, the ALJ should address and resolve the conflicting evidence relating to Jarvela's claimed ASD impairment, including his claimed subjective symptoms, and provide a clear and logical explaination of her consideration of the opinions of Dr. Wyckoff, Dr. Ference, and the evaluating psychologists.

> s/ *Carmen E. Henderson*
> CARMEN E. HENDERSON
> U.S. MAGISTRATE JUDGE

Dated: July 31, 2026